IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:25-CV-4-FL

| | |
|---|---|
| PHYLLIS W. DICKERSON, Individually and as Administratrix of the Estate of Robert Brown Dickerson,<br><br>          Plaintiff,<br><br>    v.<br><br>CRC INDUSTRIES, INC.; HENKEL CORPORATION, Individually and as Successor-in-Interest to Loctite Corporation and Henkel Loctite Corporation; BP PRODUCTS NORTH AMERICA, INC., Individually and as Successor in Interest to Sinclair Oil Corporation; ATLANTIC RICHFIELD COMPANY, Individually and as Successor in Interest to Sinclair Oil Corporation; and EXXON MOBIL CORPORATION,<br><br>          Defendants.[1] | ORDER |

This matter is before the court upon motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant Exxon Mobil Corporation ("Exxon"). (DE 12). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is denied.

**STATEMENT OF THE CASE**

Plaintiff Phyllis Dickerson ("Dickerson") and her then-living spouse Robert Dickerson (the

---

[1] The court has updated the caption of the case to reflect plaintiff's February 14, 2025, notice of voluntary dismissal as to former-defendant SUNOCO, INC. (R&M) f/k/a Sun Company, Inc. and f/k/a/ Sun Oil Company, Inc.

"decedent") originally filed this product liability action in the Court of Common Pleas of Philadelphia County, Pennsylvania July 29, 2019, captioned <u>Robert Dickerson & Phyllis Dickerson v. U.S. Steel Corp., et al.</u>, no. 190703709 (the "Philadelphia County action"). That action was dismissed on forum non conveniens grounds September 13, 2024.[2]

Dickerson then initiated this matter January 10, 2025, invoking the court's diversity jurisdiction with complaint asserting claims for negligence, including inadequate warning or instruction and inadequate design or formulation (count I), breach of warranty (count II), and wrongful death and survival (count III), arising from the decedent's alleged exposure to benzene-containing products manufactured and distributed by defendants. Plaintiff seeks compensatory and punitive damages, costs, interest, and attorneys' fees.

Defendant Exxon filed the instant motion to dismiss for failure to state a claim February 24, 2025. Plaintiff responded, and defendant Exxon replied.

In the meantime, remaining defendants filed answers.[3] Discovery is ongoing pursuant to the court's May 9, 2025, case management order.

### STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows.

Defendant Exxon's predecessor manufactured "benzene-containing products, including Varsol and toluene, xylene, mineral spirits and other benzene-containing solvents used as ingredients." (Compl. ¶ 23.f). The decedent was exposed to multiple benzene-containing products, including those produced by defendant Exxon, during the course of his employment at

---

[2] Appeal of this dismissal is pending before the Superior Court of Pennsylvania under the caption <u>Dickerson v. U.S. Steel Corp., et al.</u>, no 3131 EDA 2024. (<u>See</u> Mem. (DE 13) at 2 n.1).

[3] Plaintiff and defendant CRC Industries, Inc., filed joint notice of settlement April 18, 2025, and they anticipated filing joint motion to dismiss as to this defendant when settlement papers have been executed. (DE 26).

2

Sinclair gas station from 1955 through 1959 and Weyerhaeuser from 1965 through 2006, and during the course of non-occupational activities beginning in approximately 1955. (Id. ¶¶ 13-15).

As a result of his exposure to the benzene-containing products, the decedent contracted and was diagnosed with Myelodysplastic Syndrome ("MDS") August 8, 2017. (Id. ¶ 18). MDS is among a group of cancers and conditions known to be caused by exposure to benzene. (Id. ¶ 19). The decedent died as a result of his MDS June 10, 2023. (Id. ¶ 20).

**COURT'S DISCUSSION**

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[4]

B.  Analysis

Defendant Exxon argues plaintiff's claims are barred by North Carolina's statutes of limitations and repose. The court disagrees.

Generally, "a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the

---

[4] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

3

Case 2:25-cv-00004-FL    Document 34    Filed 07/16/25    Page 3 of 7

defendant." Goodman v. Praxair, Inc. 494 F.3d 458, 464 (4th Cir. 2007). Because a 12(b)(6) motion tests the sufficiency of the complaint, it "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Id. However, "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." Id.

Where the facts sufficient to rule on defendant Exxon's affirmative defense appear on the face of the complaint, the court examines in turn the relevant statutes of limitations and of repose.

    1.       Statute of Limitations

"In the ordinary course, a statute of limitations creates a time limit for suing in a civil case, based on the date when the claim accrued." CTS Corp. v. Waldburger, 573 U.S. 1, 7 (2014). In North Carolina,[5] a personal injury claim must be brought within three years of accrual, and such claims "shall not accrue until bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent to the claimant, whichever event occurs first." N.C. Gen. Stat. § 1-52(16). Specifically, "[i]n occupational disease cases . . . a cause of action grounded in negligence accrues when the disease is diagnosed." Dunn v. Pac. Emps. Ins. Co., 332 N.C. 129, 132 (1992).

Defendant Exxon argues that because the complaint does not allege the decedent was exposed to an Exxon product after 2006, his claims must have been brought by 2009, at the latest. The court is not persuaded.

Defendant Exxon has not demonstrated that the decedent's bodily harm had "become[] apparent or ought reasonably to have become apparent" to plaintiff or the decedent prior to his

---

[5] The parties agree that North Carolina's substantive law applies in this diversity action. When presiding pursuant to diversity jurisdiction, a federal court must apply the appropriate state's statute of limitations. Wallace v. Kato, 549 U.S. 384, 387 (2007). Under North Carolina law, the law of the forum determines the applicable statute of limitations. Sayer v. Henderson, 225 N.C. 642, 643 (1945).

4

MDS diagnosis August 8, 2017. See N.C. Gen. Stat. § 1-52(16). Therefore, plaintiff's claims accrued when the decedent was diagnosed, and plaintiff's July 29, 2019, filing in Philadelphia County was timely under North Carolina's three-year statute of limitations.[6]

Because plaintiff's claims are not barred by North Carolina's statute of limitations, defendant Exxon is not entitled to dismissal on this ground.

2. Statutes of Repose

In contrast to a statute of limitations, a statute of repose "puts an outer limit on the right to bring a civil action . . . measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." CTS Corp., 573 U.S. at 8. Defendant Exxon asserts the relevant North Carolina statute of repose for product liability claims is N.C. Gen. Stat. § 1-50(a)(6), which states: "no action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption."[7] Additionally, although there are exceptions to North Carolina's three-year statute of limitations for latent personal injury claims, "no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action." N.C. Gen. Stat. § 1-52(16).

Defendant asserts that, based on the allegations in the complaint, the date of initial purchase of the products in question could not have been later than 2006. Therefore, under § 1-50(a)(6),

---

[6] Defendant Exxon makes no argument that the limitations period was not tolled during the pendency of plaintiff's Philadelphia County action.

[7] The North Carolina General Assembly modified the statute of repose for product liability claims in 2009 through the enactment of N.C. Gen. Stat. § 1-46.1, which expands the period in which a product liability action may be brought from six to twelve years. However, N.C. Gen. Stat. § 1-46.1 is not retroactive and "became effective 1 October 2009 and applies to causes of action that accrue on or after that date." Robinson v. Bridgestone/Firestone N. Am. Tire, L.L.C., 209 N.C. App. 310, 315 (2011). Additionally, "[n]othing in [§ 1-46.1] is intended to change existing law relating to product liability actions based upon disease." 2009 N.C. Sess. Laws 420 (S.B. 882).

plaintiff's claims became barred in 2012. The court disagrees.

In Wilder v. Amatex Corp., the Supreme Court of North Carolina held that N.C. Gen. Stat. § 1-15(b), the precursor to § 1-52(16), "was never intended by the legislature to apply to claims arising out of a disease." 314 N.C. 550, 554 (1985). Accordingly, the plaintiff's claims relating to asbestosis were not barred even though the defendants ceased selling asbestos-containing products more than ten years before the suit was filed. Id. at 562.

The United States Court of Appeals for the Fourth Circuit applied the reasoning from Wilder in concluding that N.C. Gen. Stat. § 1-50(6), the precursor to § 1-50(a)(6), did not bar a claim for damages from asbestosis when the plaintiff sued within three years of his first diagnosis. Hyer v. Pittsburgh Corning Corp., 790 F.2d 30, 34 (4th Cir. 1986); see also Silver v. Johns-Manville Corp., 789 F.2d 1078, 1080 (4th Cir. 1986) ("§ 1-50(6), insofar as it constitutes a statute of repose, has no application to claims arising out of a disease."). This is because a "disease presents an intrinsically different kind of claim" than a latent injury. Hyer, 790 F.2d at 33 (quoting Wilder, 314 N.C. at 557)). The decision in Wilder "makes it plain that the State Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it." Id. at 34.

More recently, the Fourth Circuit "conclude[d] that the Supreme Court of North Carolina would not consider Section 1-52(16) applicable to claims arising out of disease." Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). The Fourth Circuit "understood the Supreme Court of North Carolina's decision in Wilder to be based not on the specific characteristics of a particular disease, but on characteristics of disease as a general phenomenon." Stahle, 817 F.3d at 102. Therefore, defendant's argument that Hyer, Silver, and Stahle are inapplicable because they do not involve MDS is unconvincing. Additionally, "neither the North Carolina General Assembly nor the North Carolina courts have taken exception to [the Fourth Circuit's] expressed understanding

6

of North Carolina law or the implications of the Wilder decision." Stahle, 817 F.3d at 103. Accordingly, this court follows the Fourth Circuit's determination that a claim arising from any disease is not "included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it." Hyer, 790 F.2d at 34.

Defendant Exxon rightly notes that no North Carolina court has held that the current versions of the statutes of repose at issue, N.C. Gen. Stat. §§ 1-50(a)(6) and 1-52(16), do not apply to disease claims. However, this court is bound by the Fourth Circuit's determinations. See Doe v. Chao, 511 F.3d 461, 465 (4th Cir. 2007) ("When matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court."). Therefore, where the Fourth Circuit has determined that §§ 1-50(6) and 1-52(16) do not apply to "claims arising out of disease," Stahle, 817 F.3d at 100, and where plaintiff's claims arise out of a disease, the statutes do not apply to plaintiff's claims.

Because the statutes of repose cited by defendant Exxon do not apply to plaintiff's claims, Exxon is not entitled to dismissal on this basis.

## CONCLUSION

Based on the foregoing, defendant Exxon's motion to dismiss (DE 12) is DENIED. Defendant Exxon is DIRECTED to file answer or other responsive pleading within 14 days of entry of this order pursuant to Rule 12(a)(4)(A).

SO ORDERED, this the 16th day of July, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge

7

Case 2:25-cv-00004-FL     Document 34     Filed 07/16/25     Page 7 of 7